26453, 26456.   JONES *v.* PACIFIC MUTUAL LIFE INSURANCE COMPANY, and *vice versa.*

Decided November 27, 1937.   Rehearing denied December 15, 1937.

18

*Barry Wright, J. M. Graham, Jr.,* for plaintiff.

*Bryan, Middlebrooks & Carter, John W. Maddox, John A. Dunaway,* for defendant.

STEPHENS, P. J. (After stating the foregoing facts.) Although it may be assumed that the insurance company, through its agent to whom the plaintiff had directed the envelope containing the check in payment of the premium, never received the check, and that the premium was not in fact paid within the grace period, it nevertheless appears from the evidence that the plaintiff drew a check in payment of the premium, payable to the defendant's authorized agent to receive it, that the check was placed in an envelope directed to the defendant's authorized agent, with the plaintiff's return address thereon, stamped with the requisite postage stamp, and placed in a mail bag in the plaintiff's office, which was used for the purpose of conveying mail sent from the plaintiff's office to the post-office, that it was the customary duty of one of two of the employees working at the plaintiff's office to carry the mail bag to the post-office daily, and, so far as it appears from the evidence, this custom was not broken. It is inferable that the letter containing the check was by one of the employees at the plaintiff's office conveyed to and deposited in the post-office in due course of mail. *Davis* v. *Allen,* 25 *Ga.* 234, and *Rawleigh Medical Co.* v. *Burney,* 25 *Ga. App.* 20 (102 S. E. 358), are distinguishable. The evidence therefore

authorizes the inference that the letter containing the check in payment of the premium was mailed by the plaintiff on January 23, 1936, was directed to the authorized agent of the defendant, and was mailed in time to reach its destination before the expiration of the grace period for the payment of the premium; that the plaintiff had no notice of the failure of the letter containing the check to reach the defendant's agent at the point of the letter's destination until after the expiration of the grace period; and that after this, and after the defendant had declared the policy lapsed and void for non-payment of premium, the plaintiff sent to the defendant another check to cover the amount of the premium, which the defendant received and cashed. It also appears from the evidence that by an unbroken custom the premiums on the plaintiff's policy had been paid by checks put in the mails, directed to the authorized agent of the defendant to collect the checks, and that the check in payment of the last premium was put in an envelope furnished by the defendant for this purpose.

Under the provisions of the policy it would become lapsed and of no force on default in the payment of any premium before the expiration of the grace period allowed. Any provision of a policy made for the company's benefit may be waived by the company either expressly or impliedly by the company's action. The company may by its course of conduct be estopped from relying upon any provision of the policy in its favor. Forfeitures are not favored by the law. Any circumstances or conduct which would indicate a waiver by the insurance company of its right under the policy to insist upon a forfeiture on the non-payment of a premium, or any course of action on the part of the insurance company which might lead the insured to honestly believe that by pursuing a particular course of conduct a forfeiture of the policy would not be incurred, would estop the company, although the premium may not have been paid in accordance with the terms of the policy, from insisting upon a forfeiture. It appears from the allegations of the petition and the evidence, that, by an unbroken custom and course of conduct between the plaintiff and the defendant insurance company, the plaintiff had paid the premiums by check deposited in the United States mail, directed to the authorized agent of the company;

that the same had always been accepted; and that as respects the last premium, the actual non-payment of which within the grace period the defendant company relies upon as working a forfeiture of the policy, the plaintiff mailed a check to the authorized agent of the company, in accordance with the usual custom, and in an envelope furnished and provided by the company for that purpose. It is inferable from the evidence as to the custom and course of conduct between the plaintiff and the defendant company, and from the defendant's sending the plaintiff the envelope addressed to the defendant, that the plaintiff was led to believe that by placing his check for the payment of the premium within the mails, properly stamped and directed to the authorized agent of the defendant, in time to have reached the defendant, and even to have reached the drawee bank and been cleared, before the expiration of the grace period, his policy would not be forfeited for non-payment of premium. The plaintiff did everything required of him, according to the custom and course of dealings, for the payment of his premium within the grace period. All that is lacking in the situation as here presented is the receipt of the check by the defendant insurance company. The plaintiff made a tender of the premium in accordance with the custom and course of dealings, and made it within the grace period for the payment of the premium, and in time for the check to have reached the defendant before the expiration of the grace period for the payment of the premium. The plaintiff had no notice of the defendant's failure to receive the check until after the expiration of the grace period for the payment of the premium. The plaintiff then mailed to the defendant another check in payment of the premium, which the defendant received and cashed, but afterwards returned the proceeds of this check to the plaintiff, which he accepted. The plaintiff was making every effort, in accordance with the custom and course of dealings, to pay his premium in the accepted manner, and the manner invited by the defendant, before the expiration of the grace period. The failure of the postal authorities to deliver the letter containing the check in due course of mail to the authorized agent of the defendant before the expiration of the grace period, which was through no fault of the plaintiff, should not operate to the plaintiff's disadvantage and work a fortfeiture of his policy.

In Travelers Ins. Co. *v.* Brown, 138 Ala. 526 (35 So. 463), the insured in a life-insurance policy, in accordance with the custom and course of dealings between him and the company, deposited in the mail, directed to the company's authorized agent, in ample time to have reached the agent before the date of maturity, a check for the amount of the premium. The check did not reach the agent, and after the date of maturity the agent informed the insured that the check had not been received. The insured then made to the company a second remittance for the premium. This was not accepted, but was returned to the insured. The court held that the policy was not voided for non-payment of the premium. The court held that the insured "having done, as he honestly believed, all that was required of him, and relying, as he had a right to do, upon their previous course of dealing in sending the checks, the respondent cannot now claim a forfeiture of the policy." See Continental Insurance Co. v. Hargrove, 131 Ky. 837 (116 S. W. 256); *Illinois Life Ins. Co.* v. *McKay*, 6 *Ga. App.* 285 (64 S. E. 1131); 32 C. J. 1203, 1204. The application of the plaintiff for reinstatement, after the company had notified him that the policy had lapsed and had invited the plaintiff to apply for reinstatement, did not amount to a waiver by the plaintiff of his right to insist upon a breach of the contract by the defendant in declaring the policy lapsed and repudiating the contract. The plaintiff merely remitted to the defendant the amount due in payment of the premium which the plaintiff had sought to pay by the check which was lost in the mail, and requested a reinstatement of the policy. The mere fact that the plaintiff went further than he was required to do, and played safe by applying for a reinstatement and accompanying his remittance for the payment of the premium with an additional amount in payment for medical examination required by the company for reinstatement of a policy, does not amount to any waiver by the plaintiff of any right to insist upon the validity of the policy. Where the policy had not lapsed and was not void and unenforceable, the action of the insurance company in repudiating the policy by stating to the plaintiff that the policy had lapsed and was void and unenforceable, and in refusing to reinstate the plaintiff, amounted to a breach by the company of the contract of insurance, and authorized the plaintiff to recover as for such

breach all the premiums which he had paid. *Alabama Gold Life Ins. Co.,* v. *Garmany,* 74 *Ga.* 51; *Glover* v. *Bankers Health & Life Ins. Co.,* 30 *Ga. App.* 308 (117 S. E. 665). The petition set out a cause of action, and the evidence adduced was sufficient to authorize a verdict for the plaintiff. The court did not err in overruling the demurrer to the petition, but erred in directing the verdict for the defendant.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. Sutton and Felton, JJ., concur.*